UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METROPOLITAN LIFE
INSURANCE COMPANY,

        Plaintiff,

v.

CHERYL HARRISON
ROBINSON, et al.,

        Defendants.
                                      /

Case No. 2:18-cv-11493

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON COUNTER-PLAINTIFFS' COUNTERCLAIMS [13]**

On May 11, 2018, Plaintiff Metropolitan Life Insurance Company ("MetLife") filed its complaint in interpleader to resolve "conflicting claims for remaining life insurance benefits" payments arising from the death of William A. Robinson, Jr. ("Decedent"). ECF 1, PgID 1. MetLife's complaint named as defendants Cheryl Harrison-Robinson, Suzanne Robinson, David Robinson, Michael Robinson, Austen Hickman, LaShonda Steel, and Shanon Steele.[1]

Attorney Tiffany Daugherty represents Decedent's sister, Suzanne, and his two sons, David and Michael ("Daugherty Defendants"). *See* ECF 1, PgID 2, ECF 7. Attorney Michael Gildner represents Decedent's wife, Cheryl, and his three stepchildren, Austen, LaShonda, and Shanon ("Gildner Defendants"). *See* ECF 1, PgID 2–3; ECF 4.

---

[1] Because the parties have similar last names, the Court will refer to individual defendants by first name (e.g. Cheryl Harrison-Robinson as "Cheryl", LaShonda Steel as "LaShonda," etc.). The parties' last names also vary between the complaint and the docket. The Court will refer to the parties by their names as they appear on the docket.

1

On July 5, 2018, the Daugherty Defendants filed an amended answer to the complaint, counterclaims against MetLife, and crossclaims against the Gildner Defendants. ECF 8. On July 10, 2018, MetLife filed an amended answer to the Daugherty Defendants' counterclaims. ECF 10.

The Gildner Defendants did not respond to MetLife's complaint, but did file an answer to the Daugherty Defendants' crossclaims. ECF 11.

On September 19, 2018, MetLife filed a motion for summary judgment on the Daugherty Defendants' counterclaims. ECF 13. On November 14, 2018, the Daugherty Defendants filed a tardy response to MetLife's motion. ECF 15.[2] The Court has reviewed the briefs and finds that a hearing is unnecessary. For the reasons below, the Court will grant MetLife's motion for summary judgment.

## BACKGROUND

As an employee at General Motors ("GM"), Decedent participated in GM's Life and Disability Benefits Program for Hourly Employees (the "Plan"). *Id.* at 3. MetLife administers the Plan pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq. Id.* ERISA defines a plan beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

The Plan allowed Decedent to identify his own beneficiaries for the insurance proceeds from the Plan ("Plan Benefits"). *See* ECF 1-2, PgID 17; ECF 1-3, PgID 20. Upon

---

[2] By Local Rule, responses to dispositive motions are due within 21 days after service of the motion. *See* E.D. Mich. LR 7.1(e)(1)(B). November 14, 2018 is fifty-six days after September 19, 2018.

2

Decedent's death, the Plan Benefits were "payable to the beneficiary of record[.]" ECF 1-4, PgID 25 (Basic Life Insurance), 26 (Optional Life Insurance).

I. Decedent's Designation of Beneficiaries

*A. October 2014 Designation.*

On October 7, 2014, Decedent designated Cheryl as the sole beneficiary of 100% of both his Basic Life and Optional Life Insurance Benefits ("October 2014 Designation"). ECF 1-11, PgID 83, 85. Decedent named David and Michael contingent beneficiaries and that entitled each to 50% of the Plan Benefits. *See id.* at 84. In other words, as of October 7, 2014, David and Michael were each entitled to receive half of Decedent's insurance proceeds only if Cheryl predeceased Decedent. *See id.*

*B. July 2015 Designation.*

On July 25, 2015, Decedent modified his designated beneficiaries for his Optional Life Insurance Benefits ("July 2015 Designation"). *See* ECF 1-10, PgID 79 (checking box indicating that the change affects only Decedent's Optional Life benefits), 81 (date). The July 2015 Designation entitled David and Michael each to 40% of Decedent's Optional Life Insurance proceeds, and Suzanne to the remaining 20% of the Optional Life benefits. *Id.* Decedent's mother was named as the sole contingent beneficiary. *Id.* at 80. The July 2015 Designation did *not* modify Decedent's Basic Life beneficiary.

*C. August 2017 Designations.*

On August 25, 2017, Decedent again modified his beneficiaries through both a form ("August 2017 Form Designation" or "Form Designation"), ECF 1-7, PgID 51–53, 56, and a handwritten letter ("August 2017 Letter Designation" or "Letter Designation"), *id.* at 55. The Form and Letter Designations conflicted with one another. Decedent checked a

3

box claiming that his Form Designation applied to "All Group Term Life coverage currently in effect" and checked both boxes titled "Basic Life" and "Optional Life." *Id.* at 56. Decedent then proceeded to designate Cheryl as beneficiary of 80% of all Basic Life and Optional Life proceeds, and David and Michael as beneficiaries of 10% each of all Basic Life and Optional Life proceeds. *Id.* at 51. Decedent named Suzanne as the sole contingent beneficiary. *Id.* at 52.

The Letter Designation stated Decedent's intent to leave Cheryl "100% of [his] Basic Life Insurance Coverage" and "80% of [his] Optional Life Insurance." *Id.* at 55. Then, Decedent stated that he "would like to leave [David] 10% of [his] Optional and also [Michael] 10% of [his] Optional Life Insurance for a total of 100%." *Id.*

MetLife sent Decedent a beneficiary confirmation ("MetLife August 2017 Confirmation") that comported with the Letter Designation. *See* ECF 1-9, PgID 76. MetLife communicated that the August 2017 changes "replace[d] all prior designations" and directed Decedent to contact MetLife's customer service center if it was incorrect. *Id.* The Court will set forth this table of the August 2017 designations for ease of reference:

| Primary Beneficiary | Form Designation | Letter Designation | MetLife August 2017 Confirmation |
|---|---|---|---|
| Cheryl | Basic and Optional: 80% | Basic: 100% Optional: 80% | Basic: 100% Optional: 80% |
| David | Basic and Optional: 10% | Basic: 0%[3] Optional: 10% | Basic: 0% Optional: 10% |
| Michael | Basic and Optional: 10% | Basic: 0% Optional: 10% | Basic: 0% Optional: 10% |

---

[3] The Court has employed 0% designations to make clear David and Michael's non-entitlement to Basic Life proceeds under the Letter Designation and MetLife Confirmation.

4

*D. October 2017 Designation.*

Several months later, on October 31, 2017, Cheryl initiated a phone call with MetLife to again modify Decedent's beneficiary designations ("October 2017 Designation"). *See* ECF 1-5, PgID 29 (transcript of the phone conversation). Decedent was present during the phone call. *See generally* ECF 1-5. During the call, the MetLife representative stated that Cheryl was presently entitled to 100% of his Basic Life proceeds and 80% of his Optional Life proceeds, and David and Michael were entitled to 10% each of his Optional Life benefits. *Id.* at 30. Decedent stated his intent to change the beneficiaries for his Optional Life Insurance. *Id.*

Cheryl then served as the primary communicator of the changed beneficiaries. *See generally id.* at 30–44. At the end of the call, the MetLife representative asked to verify the information with Decedent. *Id.* at 44. Then, the MetLife representative said that, for Decedent's Optional Life Insurance, the new designations were: Cheryl receiving 80%, David and Michael each receiving 5%, and Austen, Shannon, LaShonda, and Suzanne each receiving 2.5%. *Id.* at 45. Decedent confirmed that was his wish. *Id.* Decedent then agreed that the "beneficiary choices take effect immediately and replace all prior designations for coverage" and that he consented to the changes by e-signature. *Id.* Decedent did not have any questions. *Id.* Cheryl also confirmed the designations. *Id.*

On November 3, 2017, MetLife sent Decedent a new beneficiary confirmation ("MetLife November 2017 Confirmation"). ECF 1-6. The letter confirmed that Cheryl would receive 100% of the Basic Life Insurance proceeds. *See id.* For ease of reference, the Court will again employ a table of the percentage distributions for Decedent's Optional

5

Life Insurance benefits following the October 2017 Designation (as stated during Decedent's phone call and the MetLife November 2017 Confirmation).

| Beneficiary | Relationship | % Share of Optional Life Insurance |
|---|---|---|
| Cheryl | Spouse | 80.0% |
| David | Son | 5.0% |
| Michael | Son | 5.0% |
| Austen | Stepson | 2.5% |
| Shanon | Stepdaughter | 2.5% |
| LaShonda | Stepdaughter | 2.5% |
| Suzanne | Sister | 2.5% |

*See* ECF 1-6, PgID 48 (MetLife's November 2017 Confirmation of the October 2017 Designation); *see also* ECF 1-8, PgID 74 (same).

Since October 2014, therefore Cheryl was entitled to *at least* 80% of Decedent's Basic Life Insurance benefits, *see supra*.

II.    Decedent's Death and Aftermath

Decedent died on November 27, 2017. ECF 1-12, PgID 87 (death certificate). Upon his death, Decedent's benefits from the Plan included $78,000 in Basic Life Insurance coverage and $125,000 in Optional Life Insurance coverage. ECF 1, PgID 7.

On December 12, 2017, Ms. Daugherty faxed a letter to MetLife demanding that it freeze Decedent's insurance benefits because David and Michael intended to contest the validity of Decedent's beneficiary designations. ECF 1-18, PgID 116–17.[4] On December 15, 2017, Cheryl, LaShonda, Shanon, Austen, and Suzanne submitted Life Insurance Claim Forms for the Plan Benefits. *See* ECF 1-13–ECF 1-17.

---

[4] Ms. Daugherty later notified MetLife that she represented Suzanne, Decedent's sister, as well. ECF 1-18, PgID 118.

Throughout December 2017 and January 2018, Ms. Daugherty sent numerous documents to MetLife including: (1) a screenshot of a message from an unidentified individual calling Cheryl a "BITCH" concerned only with money;[5] (2) a letter from David recounting various negative conversations with Decedent about Cheryl; (3) an "affidavit" from Michael explaining Decedent's regret for his marriage to Cheryl and his intentions to leave his life insurance benefits to David, Michael, and Suzanne; (4) an "affidavit" from Decedent's ex-wife Joyce Milton describing how Decedent hated his relationship with Cheryl and intended to take care of his sons as "the beneficiaries of his life insurance policy"; and (5) a letter from Suzanne explaining Decedent's closeness to David, Michael, Suzanne, and his mother. ECF 1-18, PgID 120–23, 125, 127.

On April 11, 2018, because "the least amount of Basic Life Insurance Benefits designated" to Cheryl was 80%, MetLife distributed $63,577.05 to Cheryl (the amount consisting of $62,400, which is 80% of $78,000, and interest of $1,177.05). ECF 1, PgID 9; *see also* ECF 1-19, PgID 137 (check payable to Cheryl). MetLife did not make any payments from Decedent's Optional Life Insurance Benefits. ECF 1, PgID 9.

According to MetLife, the Plan Benefit amounts in dispute are the remaining $15,600.00 of Decedent's Basic Life Insurance Benefits and $125,000.00 of the Optional Life Insurance Benefits (collectively "Remaining Plan Benefits"). *Id.* MetLife represents that it cannot determine the proper beneficiaries of the Remaining Plan Benefits because Ms. Daugherty has stated "she has information that will show that any beneficiary

---

[5] Later correspondence revealed that "Tracy"—a woman Decedent dated before his engagement to Cheryl—sent the message. *See* ECF 1-18, PgID 133–34.

designation naming Cheryl Harrison-Robinson as a beneficiary of the Decedent's life insurance benefits is not valid." ECF 1, PgID 10.

On April 10, 2018, MetLife sent Ms. Daugherty a letter denying David and Michael's claims to 40% of Decedent's Optional Life Insurance Benefits. ECF 13-7, PgID 309. The same day, MetLife sent Suzanne a letter denying her claim. *Id.* at 311. The letters described the available appeal process. *See id.* at 309–12.

On April 12, 2018, MetLife sent Cheryl and Ms. Daugherty a letter regarding Decedent's Basic Life Insurance Benefits. MetLife advised the parties that it considered only 80% of Decedent's Basic Life Insurance Benefits as "uncontested." ECF 1-20, PgID 140. MetLife further advised that it was unable to determine who should receive the remaining 20% because of the way in which Decedent filled out his beneficiary-designation form and that it could not decide "whether the contested Basic Life Insurance Plan Benefits should be paid solely to Cheryl Harrison-Robinson, or if they should be divided between Cheryl, David, and Michael, in shares of 80%, 10%, and 10%, respectively." *Id.* MetLife stated that the parties could try to "resolve the matter amicably" and avoid litigation. *Id.*

On April 19, 2018, Ms. Daugherty "advised MetLife that no agreement to resolve this matter was possible and that the entire amount of the Decedent's life insurance benefits was being contested." ECF 1, PgID 10. On April 20, 2018, in response to a voicemail from Ms. Daugherty, MetLife indicated that the interpleader action would "encompass all of the payable funds . . . . The total Basic Life Insurance benefit is $78,000 and the total Optional Life Insurance benefit is $125,000." ECF 15-1, PgID 321.

8

III.   Daugherty Defendants' Counterclaims

The Daugherty Defendants filed the following counterclaims: (1) MetLife acted arbitrarily and capriciously to change Decedent's beneficiary designations; (2) MetLife breached Decedent's insurance agreement; (3) MetLife breached an implied covenant of good faith and fair dealing; (4) MetLife tortiously breached an implied covenant of good faith and fair dealing; (5) MetLife acted in bad faith; and (6) MetLife engaged in unfair trade practices. ECF 8, PgID 200–06.

The Daugherty Defendants also stated allegations of undue influence, fraud, duress, and unjust enrichment against the Gildner Defendants. *Id.* at 207–13. It is unclear whether any of these four claims relate to MetLife.

Ultimately, the Daugherty Defendants are upset that MetLife failed to interplead all of Decedent's Plan Benefits and that it instead distributed 80% of Decedent's Basic Life Insurance benefits to Cheryl. *See* ECF 15, PgID 317–19.

**STANDARD OF REVIEW**

The Court may grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that a fact is, or is not, genuinely disputed, a party is required to either "cite[] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

**DISCUSSION**

I.  Daugherty Defendants' Breach of Contract, Tortious Breach of Contract, Breaches of Implied Covenant, Bad Faith, and Unfair Trade Practices Counterclaims

MetLife argues that ERISA preempts any state-law claims. ECF 13, PgID 277. The Daugherty Defendants do not directly respond to MetLife's preemption argument, but maintain that the counterclaims should not be dismissed because MetLife "lied" and acted "completely contrary" to their representations. ECF 15, PgID 316, 318.

The parties do not dispute that ERISA governs the Plan. The Plan is therefore an employee-welfare benefit plan as defined by ERISA. *See* 29 U.S.C. § 1002(1). ERISA provides mechanisms for civil enforcement of plans governed by ERISA. *See* 29 U.S.C. § 1132. ERISA preempts state common-law causes of action related to the processing of a benefit claim under an employee benefit plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987) (finding the exclusive civil enforcement scheme detailed by ERISA preempts state law claims); *see also Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 982 (6th Cir. 1991) (recognizing that ERISA preempted state law causes of action related to General Motors' employee welfare benefit plan).

The Daugherty Defendants' claims that MetLife breached or tortiously breached an implied covenant of good faith and fair dealing; acted in bad faith; and engaged in unfair trade practices are preempted by ERISA. *See Dedeaux*, 481 U.S. at 43, 57 (first identifying the claimant's causes of action as tortious breach of contract, breach of

10

fiduciary duties, and fraud in the inducement and then finding ERISA preempts all such causes of action).

ERISA also preempts the Daugherty Defendants' breach-of-contract claim. *See Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (citing *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988), which found that state law breach-of-contract and promissory-estoppel claims are preempted by ERISA).[6]

Summary judgment is appropriate on these five counterclaims.

II.     Daugherty Defendants' "Arbitrary and Capricious" Counterclaim

The Daugherty Defendants maintain that MetLife "wrongfully changed the decedent's beneficiary designations," "erroneously disbursed $63,000" to Cheryl, "failed to conduct an investigation," and took actions "not based upon consideration of the relevant factors" in an "abuse of discretion" and against the law. ECF 8, PgID 200–01. The Daugherty Defendants' "arbitrary and capricious" counterclaim does not cite an ERISA provision or any other legal basis. The Court nonetheless will construe the claim as one arising under ERISA.[7] Because MetLife distributed only the proceeds from Decedent's Basic Life Insurance Benefits, the Court construes the claim as applying only to MetLife's decision to pay Cheryl.

MetLife contends that the Daugherty Defendants' remaining counterclaim should be dismissed for failure to exhaust available appeal procedures. ECF 13, PgID 277. It

---

[6] Although MetLife argues preemption, it did not list the Daugherty Defendants' breach-of-insurance agreement claim as one that is preempted. *See* ECF 13, PgID 277.

[7] Were the Daugherty Defendants' "arbitrary and capricious" counterclaim one based in state law, it would likely be preempted by ERISA as discussed *supra* Discussion, Part I.

further argues that any dismissal should be with prejudice because the Daugherty Defendants filed their counterclaim *after* the time to appeal expired. *Id.* at 283.

The Daugherty Defendants respond that their counterclaim should survive because MetLife lied, they never received notice, and the cases cited by MetLife are inapplicable to the present case. Particularly, the Daugherty Defendants argue that exhaustion is not required because they did not initiate a lawsuit against MetLife. ECF 15, PgID 319.

>   A.  *Suzanne Lacks Standing for Her "Arbitrary and Capricious" Counterclaim.*

After construing the Daugherty Defendants' "arbitrary and capricious" counterclaim as one arising under ERISA, the Court finds that Suzanne lacks standing to bring the claim. As previously noted, the Daugherty Defendants' counterclaims relate to MetLife's distribution of certain portions of Decedent's Basic Life Insurance Benefits.

From the time of Decedent's death until the filing of the counterclaims, Suzanne was not a beneficiary. A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Only participants, beneficiaries, fiduciaries, and other listed parties may bring claims to enforce ERISA. *See* 29 U.S.C. § 1132(a).

At most, Suzanne was a contingent beneficiary to Decedent's Plan Benefits.[8] But, at the time of Decedent's death, the primary beneficiaries were alive and Suzanne was

---

[8] The analysis will assume, without deciding, that Decedent's August 2017 Form Designation applies, and his August 2017 Letter Designation, MetLife's August 2017 Confirmation, Decedent's October 2017 Designation, and MetLife's November 2017 Confirmation do not apply.

    Decedent's August 2017 Form Designation named Suzanne as the sole contingent beneficiary. ECF 1-7, PgID 52. The Form Designation applied to Decedent's Basic Life and Optional Life Insurance Benefits. *Id.* at 56. So, at most, Suzanne was entitled to 100%

12

accordingly not "entitled to a benefit" under Decedent's employee benefit plan. Under the plain terms of ERISA, therefore, she is not a "beneficiary" and lacks standing to bring her "arbitrary and capricious" counterclaim against MetLife.

*B. David and Michael's Failure to Exhaust is Excusable.*

MetLife argues that David and Michael's "arbitrary and capricious" counterclaim should be dismissed for failure to exhaust. MetLife's argument is misguided for two reasons. First, there is no evidence that the Daugherty Defendants were notified of the appeal procedure available to them for MetLife's Basic Life Insurance Benefits determination. Second, based on MetLife's own representation, exhausting the Plan's appeal procedure was futile.

First, the cases MetLife cites in support of its exhaustion argument implicitly acknowledge plan administrator's notification to beneficiaries of appeal procedures. *See Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 454 (6th Cir. 1991) ("Mr. Baxter admits that he was notified that his claim was denied and that he could have sought administrative review of this denial."); *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (containing excerpts of denial letter explaining the review process); *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990) (noting that the plan participant "had access" to the plan, which provided for a mandatory internal appeals process). Here, there is no evidence to suggest that David and Michael had access to the Plan or its appeal procedures.

---

of Decedent's Plan Benefits "only if all of the primary beneficiaries are deceased at the time of [Decedent's] death." *Id.* at 52.

Second, a court may excuse exhaustion if appeal is futile because "the review procedures are insufficient or unfair, or . . . an available remedy is inadequate." *Ravencraft*, 212 F.3d at 343.

MetLife's April 12, 2018[9] letter to David and Michael detailing its Basic Life Insurance Benefits decision provided David and Michael with two options: (1) amicably resolve the dispute, or (2) proceed to litigation. ECF 1-20, PgID 139–40. MetLife explained that Cheryl, David, and Michael's "claims are adverse to one another and raise questions of fact and law that cannot be resolved by MetLife[.]" *Id.* at 139. MetLife's letter to David and Michael concerning the Decedent's Basic Life benefits failed to notify them of available appeal procedures, if any, and admitted that the Plan's appeal procedures were futile because MetLife could not resolve the claims "without exposing the plan to the danger of double liability." *Id.*

### C. David and Michael's "Arbitrary and Capricious" Counterclaim Fails as a Matter of Law.

Even though the Court will excuse David and Michael's failure to exhaust, their "arbitrary and capricious" counterclaim fails as a matter of law. Denials of benefits challenged under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), receive *de novo* review unless the denial fits within the plan administrator's discretionary authority to determine eligibility. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1063 (6th Cir. 2014) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). A

---

[9] MetLife's argument relies primarily upon its April 10, 2018 letters to David and Michael. ECF 13, PgID 275. The April 10 letters do include an explanation of the appeal procedure, but the content of the letters relates only to MetLife's consideration of Decedent's Optional Life Insurance Benefits. *See* ECF 13-7, PgID 309, 311. The April 10 letters are inapposite to the issues related to the Basic Life determination and the Daugherty Defendants' counterclaims.

plan administrator's discretionary decision is reviewed under an "arbitrary and capricious" standard. *Id.* at 1064 (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456 (6th Cir. 2003)). The arbitrary and capricious standard upholds an administrator's decision "if it is 'rational in light of the plan's provisions.'" *Id.* (quoting *Marks*, 342 F.3d at 457).

Under either standard, MetLife's decisions to change the beneficiary designations and to interplead only 20% of Decedent's Basic Life Insurance Benefits survive scrutiny. Between 2014 and 2017, Decedent made four changes to the beneficiaries of his life insurance plans. *See supra*, Background, Part I.

In each of the four changes, Cheryl received *at minimum* 80% of Decedent's Basic Life Insurance Benefits. *See id.*; *see also* 13-6, PgID 305 (listing the Decedent's designations). The record evidence therefore supports MetLife's decision to disburse to Cheryl 80% of Decedent's Basic Life proceeds as uncontested. At no point between 2014 and Decedent's death were David, Michael, or any combination of beneficiaries besides Cheryl arguably entitled to more than 20% of Decedent's Basic Life funds. David and Michael's "Arbitrary and Capricious" counterclaim therefore fails as a matter of law. Summary judgment is appropriate on the counterclaim.

III.    Case Management

The Gildner Defendants did not respond to MetLife's complaint. The Court will order them to do so. The Court will also order the parties to file a joint status report detailing next steps for the case.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's motion for summary judgment on David Robinson, Michael Robinson, and Suzanne Robinson's counterclaims [13] is **GRANTED**.

15

**IT IS FURTHER ORDERED** that the Gildner Defendants shall **FILE** a response to MetLife's interpleader complaint no later than **Wednesday, January 9, 2019**.

**IT IS FURTHER ORDERED** that all parties shall **FILE** a joint status report no later than **Wednesday, January 9, 2019** providing guidance on how the parties intend to proceed through the litigation. In particular, the parties should advise whether MetLife should submit the disputed funds to the Court, whether MetLife should be dismissed from the action, and whether Defendants require discovery. The parties should include any other information they consider reasonably necessary.

This is not a final order and does not close the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 19, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 19, 2018, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager